[Cite as *In re N.S.*, 2015-Ohio-4340.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| IN THE MATTER OF: | JUDGES: |
|  | Hon. John W. Wise, P. J. |
|  | Hon. Patricia A. Delaney, J. |
| N. S. | Hon. Craig R. Baldwin, J. |
|  |  |
| MINOR CHILD | Case No. 2015 CA 00115 |

O P I N I O N

|  |  |
|---|---|
| CHARACTER OF PROCEEDING: | Civil Appeal from the Court of Common Pleas, Juvenile Division, Case No. 2014 JCV 00960 |
|  |  |
| JUDGMENT: | Affirmed |
|  |  |
| DATE OF JUDGMENT ENTRY: | October 19, 2015 |
|  |  |
| APPEARANCES: |  |

| For Appellant-Father | For Appellee-Agency |
|---|---|
| MARY G. WARLOP | JAMES B. PHILLIPS |
| ABNEY LAW OFFICE | STARK COUNTY JFS |
| 116 Cleveland Avenue, NW, Suite 500 | 221 Third Street, SE |
| Canton, Ohio 44702 | Canton, Ohio 44702 |

*Wise, P. J.*

{¶1}. Appellant Kye Schlott appeals the decision of the Stark County Court of Common Pleas, Juvenile Division, which granted permanent custody of his son, N.S., to Appellee Stark County Job and Family Services ("SCJFS"). The relevant facts leading to this appeal are as follows.

{¶2}. On September 23, 2014, Appellee SCJFS filed a complaint alleging that N.S., then a newborn infant, was dependent under R.C. 2151.04(B), (C), and (D). Initial concerns included the mental health of the mother, Desere Ohlinger, as well as her cognitive issues and the deplorable condition of the family's home. There were also concerns about appellant-father's substance abuse, specifically alcohol, reports of his physical abuse of Desere, and his anger management and antisocial behavior issues. Furthermore, the agency was already involved with the family regarding K.S., an older sibling of N.S.

{¶3}. Emergency shelter care was ordered by the trial court on September 24, 2015.

{¶4}. An adjudication hearing took place on December 4, 2014. Both parents stipulated to a dependency finding at that time. Temporary custody of N.S. with SCJFS was also maintained on December 4, 2014.

{¶5}. SCJFS filed a motion for permanent custody on February 3, 2015. The matter proceeded to evidentiary hearings held on May 4 and May 15, 2015, regarding both N.S. and his brother K.S. Following said proceedings, the trial court granted permanent custody of N.S. to SCJFS, and issued separate orders regarding K.S.

{¶6}. On June 17, 2015, appellant filed a notice of appeal.[1] He herein raises the following two Assignments of Error:

{¶7}. "I. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY [OF N.S.] TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT GROUNDS EXISTED FOR PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶8}. "II. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT IT IS IN THE BEST INTERESTS OF THE MINOR CHILD TO GRANT PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I.

{¶9}. In his First Assignment of Error, appellant-father contends the agency failed to demonstrate proper grounds for the trial court to award permanent custody of N.S. We disagree.[2]

{¶10}. The pertinent statutory law for our present consideration is R.C. 2151.414(B)(1), which states in relevant part as follows:

---

[1] Appellant has separately appealed the trial court's grant of legal custody of K.S., the older brother of N.S., to paternal relatives, rendered under trial court case number 2014JVC00206.

[2] The mother of N.S. did not contest permanent custody and has not appealed.

{¶11}. "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

{¶12}. "(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

{¶13}. "(b) The child is abandoned.

{¶14}. "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

{¶15}. "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as

described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

{¶16}. "(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state."

{¶17}. We note the trial court relied on R.C. 2151.414(B)(1)(a), *supra*, in this matter. In its response brief, SCJFS incorrectly asserts the trial court also relied on R.C. 2151.414(B)(1)(d), sometimes termed the "twelve of twenty-two" rule. *See* Appellee Brief at 9. It is well established that (B)(1)(a) and (B)(1)(d) are independently sufficient to use as a basis to grant an agency's motion for permanent custody. *See In re M.R.,* 3d Dist. Defiance No. 4–12–18, 2013–Ohio–1302, ¶ 80. However, our review of the pertinent trial court documents reveals no reliance on the "twelve of twenty-two" option, which would have nonetheless been mathematically impossible given the very young age of N.S. at the time of the agency's request for permanent custody.

{¶18}. The record before us includes the following evidence as would pertain to a "(B)(1)(a)" determination: Appellant did not significantly remedy the home condition factors (described by a caseworker as "pretty horrible") which were of concern to the agency during the case, including junk and automotive fluid containers on the porch, garbage and cat food on the floor, unmaintained kitty litter bins, unsanitary bathroom facilities, and a gaping hole in the middle of the kitchen floor (apparently patched shortly before the trial). Tr. at 13, 16-17, 28. Appellant participated in a Goodwill Parenting program and had scored well in the final written portions, but he received only a

certificate of attendance, with the instructor testifying that she still had "grave concerns" about appellant's ability to parent. Tr. at 103. Appellant, who has a criminal record for menacing and domestic violence (Tr. at 20-21), attended Melymbrosia group counseling, but the clinical director opined that the program did not alter appellant's thinking or sense of accountability, or result in successful treatment. Tr. at 75-77. Michael Stranathan, a psychology assistant at NEOBH, completed a parenting evaluation and testified without objection as an expert witness. Tr. at 41. He stated, *inter alia*, that appellant has presented a history of anti-social and aggressive behaviors, creating long-term concerns about appellant's ability to parent. *See* Tr. at 44-45. The SCJFS ongoing family services worker, Wanda Pounds, observed that despite the utilization of numerous service providers, the repeated result is unsuccessful case plan progress and a complete lack of recommended reunification by said providers. *See* Tr. at 25-27.

{¶19}. Upon review, and in consideration of the stipulation as to the child's mother, we hold the trial court did not err in determining, pursuant to R.C. 2151.414(B)(1)(a), that N.S. could not be placed with appellant within a reasonable time and should not be placed with appellant.

{¶20}. Appellant's First Assignment of Error is therefore overruled.

II.

{¶21}. In his Second Assignment of Error, appellant contends the trial court erred in concluding permanent custody of N.S. was in the child's best interests. We disagree.

{¶22}. In determining the best interest of a child for purposes of a permanent custody disposition, the trial court is required to consider all relevant factors, including,

but not limited to, the factors contained in R.C. 2151.414(D)(1). These statutory factors are as follows:

{¶23}. "(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

{¶24}. "(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

{¶25}. "(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

{¶26}. "(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

{¶27}. "(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."

{¶28}. As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base his or

her judgment. *Cross Truck v. Jeffries,* 5th Dist. Stark No. CA–5758, 1982 WL 2911. Generally, a civil judgment which is supported by competent and credible evidence may not be reversed as being against the manifest weight of the evidence. *See State v. McGill,* 5th Dist. Fairfield No. 2004–CA–72, 2005–Ohio–2278, 2005 WL 1092394, ¶ 18. A reviewing court must determine whether the finder of fact, in resolving conflicts in the evidence, clearly lost his or her way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *See Hunter v. Green,* 5th Dist. Coshocton No. 12–CA–2, 2012–Ohio–5801, 2012 WL 6094172, ¶ 25, citing *Eastley v. Volkman,* 132 Ohio St.3d 328, 972 N.E.2d 517, 2012–Ohio–2179. It is well-established that the trial court is in the best position to determine the credibility of witnesses. *See*, *e.g.*, *In re Brown,* 9th Dist. Summit No. 21004, 2002–Ohio–3405, ¶ 9, citing *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212.

**{¶29}.** Furthermore, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children* (Nov. 13, 2000), 5th Dist. Stark No. 2000CA00244, 2000 WL 1700073, quoting *In re Awkal* (1994), 95 Ohio App.3d 309, 316, 642 N.E.2d 424.

**{¶30}.** In the case *sub judice*, testimony by the ongoing caseworker, Wanda Pounds, indicated that N.S. has no medical or delay issues, and his present foster family has expressed an interest in adoption. N.S. was not placed in the same home with his brother, K.S., although contacts have been arranged by the foster parents. During father/child supervised visits, appellant sometimes had to be reminded of

changing and feeding duties, and the caseworker opined that no bond exists between appellant and the child. *See* Tr. II at 13-14. In regard to the option of simply extending temporary custody for awhile, Ms. Pounds clearly stated: "[N]o positives have ever resulted [on the case plan]. I don't see what six more months would do." Tr. at 26. The guardian ad litem, Attorney Vernon Infantino, testified that he felt appellant had done very little during the case and that appellant's home remained an inappropriate setting for N.S. He recommended permanent custody in order to provide stability and consistency for the child. *See* Tr. II at 23-27.

{¶31}. Upon review of the record and the findings of fact and conclusions of law therein, we find no basis to alter the decision of the trier of fact, and we conclude the grant of permanent custody of N.S. was made in the consideration of the child's best interests and did not constitute an error or an abuse of discretion.

{¶32}. Appellant's Second Assignment of Error is therefore overruled.

{¶33}. For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Stark County, Ohio, is hereby affirmed.

By: Wise, P. J.
Delaney, J., and
Baldwin, J., concur.

JWW/d 1014